UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN GRAY, <br><br> Plaintiff, <br><br> v. <br><br> FLEETPRIDE, INC., <br><br> Defendant. | Case No. 21 C 4981 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Defendant FleetPride, Inc. ("FleetPride") fired Plaintiff Brian Gray from his position as a Driver. Gray then filed this lawsuit alleging that FleetPride violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by firing him because of his disability, failing to accommodate his disability, retaliating against him for complaining about the discrimination, and that FleetPride recklessly inflicted emotional distress on him. The Court previously granted a motion to dismiss the original complaint and gave Gray leave to file an amended complaint. Doc. 25. On June 24, 2022, Gray filed a First Amended Complaint ("FAC"), alleging disability discrimination based on his discharge and failure to accommodate his disability in violation of the ADA. FleetPride has moved again to dismiss Gray's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons explained below, FleetPride's motion [30] is denied.

**I. BACKGROUND**

The Court assumes the truth of the allegations in Gray's FAC and construes the complaint and all reasonable inferences in his favor. *Burke v. Boeing Co.*, 42 F.4th 716, 723 (7th Cir. 2022). As set forth in the FAC, Gray was employed by Midway Truck Parts as a Driver beginning on

March 29, 1999. FAC, Doc. 25, ¶ 12. Midway Truck Parts was acquired by FleetPride in about 2011, and Gray remained employed as a Driver by FleetPride. *Id*. ¶¶ 13, 14. On December 22, 2016, Gray was injured on the job while making a delivery. *Id*. ¶ 15. Almost five months later, on May 18, 2017, Gray provided FleetPride with a letter from his physician releasing him to return to work with restrictions. *Id*. ¶ 16. In particular, Gray's physician's letter stated that he could return to work on May 22, 2017 with permanent restrictions that he should be precluded from lifting more than 35 pounds and limited to pushing and pulling at 150 pounds. *Id*. ¶ 17. Due to his restrictions, Gray told FleetPride that he was willing and able to either work in a new position or a position in an alternative location. *Id*. ¶¶ 19, 25. Then, on May 22, 2017, FleetPride discharged Gray, stating "since your restrictions are permanent, unfortunately we are unable to accommodate." *Id*. ¶¶ 21, 23.

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a viable complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The Supreme Court has explained that to survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Bilek v. Fed. Ins. Co.*, 8

2

F.4th 581, 586 (7th Cir. 2021) ("We have considered that *Twombly* and *Iqbal* require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint.") (internal quotation marks omitted). "But the proper question to ask is still *could* these things have happened, not *did* they happen." *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (emphasis in original) (internal quotation marks omitted).

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "Discrimination can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee." *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020); 42 U.S.C. § 12112(a). The FAC alleges one count under the ADA, but the pleading sets forth two separate claims—one for disparate treatment related to Gray's discharge and one for failure to accommodate Gray's disability. Doc. 26, ¶¶ 11-39. FleetPride moves to dismiss both of these claims. Specifically, FleetPride raises five arguments in support of its motion to dismiss: (1) Gray has not sufficiently alleged that he is actually disabled under the terms of the ADA; (2) Gray fails to plausibly allege that FleetPride regarded him as disabled; (3) Gray fails to allege that FleetPride had open positions for which he was qualified; (4) Gray has not alleged that he requested a reasonable accommodation; and (5) Gray has not identified any reasonable accommodation that would have allowed him to perform the essential functions of his Driver position. The Court addresses these arguments in turn.

A. **Disability Under the ADA**

FleetPride first argues that Gray has not adequately alleged that he was "disabled" under the ADA, and therefore, he cannot maintain his discrimination and failure to accommodate claims.

*Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 935–36 (7th Cir. 2006) (if plaintiff is not disabled, "then neither his discrimination claim nor his failure to accommodate claim can proceed, as this is the first element of both claims."). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Gray claims that he suffers from an actual impairment and that FleetPride perceived him as disabled under 42 U.S.C. § 12102(1)(A) and (C).

The ADA explicitly directs that "disability" shall be "construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). The statute defines "major life activities" to include "lifting" and "working." 42 U.S.C. § 12102(2)(A); *see also* 29 C.F.R. § 1620.2(i)(1)(i) (including additional activities of sitting, reaching, and interacting with others). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Richardson v. Chicago Transit Authority*, 926 F.3d 881, 889 (7th Cir. 2019) (*quoting* 29 C.F.R. § 1630.2(j)(1)(ii)); *see also id.* § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard."). "The question is whether a plaintiff is limited 'as compared to most people in the general population.'" *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp.3d 854, 881 (N.D. Ill. Jan. 15, 2014) (*quoting* 29 C.F.R. § 1630.2(j)(1)(ii)). In the ADA context, a plaintiff "must allege that he is disabled but, with or without reasonable accommodation, can still do the job." *Freeman v. Metro. Water Reclamation Dist. Of Greater Chi.* 927 F.3d 961, 965 (7th Cir. 2019).

With these standards in mind, the Court turns to its analysis.

### 1. Actual Impairment

FleetPride contends that there are no facts to support that Gray's injury substantially limited any of his major life activities. The Court disagrees. With respect to an actual impairment, Gray alleges that he suffered an injury on the job on December 22, 2016, which required him to be off work until May 22, 2017. Gray identified that his lifting and ability to push and pull were limited due to his injury. Gray's physician stated that he could return to work on May 22, 2017, but he should not lift over 35 pounds and had a restriction of pushing and pulling at 150 pounds. Gray alleges that his post-injury condition and corresponding permanent physical restrictions substantially limit his daily life and cause him pain. Doc. 26, ¶ 18. "Lifting" and "reaching" are considered major lift activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1620.2(i)(1)(i). Because a substantial limitation need not be severe and Gray adequately describes his injury and symptoms, pain and difficulties lifting and pushing/pulling, the Court can plausibly infer that Gray is limited in lifting and reaching "as compared to most people in the general population." 29 C.F.R. § 1620.2(j)(1)(ii). Thus, viewing the facts alleged in the FAC in the light most favorable to Gray, the Court concludes that Gray adequately pleads that his physical condition substantially affects his ability to lift and reach and qualifies as a disability under the ADA. 42 U.S.C. § 12102(4)(C) ("An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.").

Another potentially impacted major life activity is "working." Gray plausibly alleges that his post-injury condition substantially limits his ability to work. The ADA also specifically lists "working" as a major life activity. *See* 42 U.S.C. § 12102(2)(A). As FleetPride observes, a physical impairment rendering a plaintiff unable to perform one job does not necessarily constitute

a condition substantially limiting one or more major life activities. Doc. 30 at 4; 29 C.F.R. § 1630, Appendix, Interpretative Guidance on Title I of the Americans With Disabilities Act ("Appendix"), *Substantially Limited in Working* ("Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working."); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) ("not every impairment will constitute a disability within the meaning of" the ADA). With regard to working, the appendix to the regulation states that an individual is "substantially limited" if the "impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. § 1630, Appendix, *Substantially Limited in Working*; *see Carothers v. County of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015). The class of jobs may be determined by the "nature of the work" (*e.g.*, "commercial truck driving, assembly line jobs, food service jobs, clerical jobs, or law enforcement jobs") or by reference to "job-related requirements" (*e.g.*, jobs requiring "repetitive bending, reaching, or manual tasks" or "jobs requiring repetitive or heavy lifting, prolonged sitting or standing, extensive walking, driving, or working under conditions such as high temperatures or noise levels"). 29 C.F.R. § 1630, Appendix, *Substantially Limited in Working*.

Although Gray has not directly alleged that he is unable to perform an entire class of jobs because of his disability, the facts alleged allow the Court to make a reasonable inference that he is unable to perform any driver positions requiring deliveries. Gray alleges that his physical impairment coupled with pain prevent him from performing the FleetPride Driver position. If Gray is not able to work at FleetPride as a Driver making deliveries, it is reasonable to infer that he would not be able to perform a variety of delivery driver positions and thus, is substantially limited in his ability to work in a class of jobs or broad range of jobs. FleetPride points out that

6

Gray's allegations confirm that he could still work and identify several jobs he could have theoretically performed for FleetPride. Doc. 30 at 5. Contrary to FleetPride's suggestion, the fact that Gray believed he could still work and was qualified for several other positions at FleetPride is not a bar to Gray's claim that he had an actual disability. The ADA does not require a plaintiff to show that he is totally unable to work to be considered substantially limited in any of his major life activities. 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."). Again, a plaintiff must show that "the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities." 29 C.F.R. § 1630, Appendix, *Substantially Limited in Working*. At this stage, the Court finds that Gray's allegations are enough to plausibly allege that his physical impairment prevents him from performing a class of jobs or broad range of jobs. *See Chicago Regional Council of Carpenters v. Thorne Associates, Inc.*, 893 F.Supp.2d 952, 962 (N.D. Ill. Sept. 25, 2012) (Regarding the major life activity of working, "[i]f Rosas were unable to perform lifting tasks that really are required for journeyman carpentry work—or even for drywall installation work alone—he is limited in a broad range of jobs.").

FleetPride argues that a lifting restriction like Gray's does not qualify as a substantial limitation on working. Doc. 30 at 4-5. The cases that FleetPride cites in support of its claim that a 35-pound lifting restriction cannot substantially limit a person's ability to work are unpersuasive. All of the cases FleetPride relies on predate the ADA Amendments Act of 2008 ("ADAAA") or apply the law in place prior to the ADAAA. *See Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002) ("An inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life."); *Contreras v. Suncast Corp.*,

7

237 F.3d 756, 763 (7th Cir. 2001) (45-pound lifting restriction and inability to engage in strenuous work or drive a forklift for more than four hours per day failed to "constitute a significant restriction on one's capacity to work, as the term is understood within the ADA"); *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 552 n.2 & 555 (7th Cir. 2011) ("indeed the inability to do heavy lifting is not a substantial limitation as compared to the average person."); *Chicago Reg'l Council of Carpenters v. Berglund Constr. Co.*, 2012 WL 3023422, at *2 (N.D. Ill. July 24, 2012) (citing only to *Serednyj* and concluding that the "inability to life more than 68 pounds does not qualify as disabled or 'regarded as' disabled under the ADA."). Although in "pre-ADAAA cases, the Seventh Circuit held that lifting restrictions were not substantial limitations," "[t]he Seventh Circuit has not addressed the issue of whether lifting restrictions are substantial limitations under the standard outlined in the ADAAA." *Bob-Maunuel*, 10 F.Supp.3d at 881.

Importantly, the ADAAA broadened the protections of the ADA. *Bob-Maunuel*, 10 F.Supp.3d at 880 ("[T]he ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive."). "Congress passed these amendments in 2008 to ensure that the ADA's 'definition of disability . . . be construed in favor of broad coverage.'" *Richardson*, 926 F.3d at 888 (*quoting* 42 U.S.C. § 12102(4)(A)). The statute also provides that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." ADAAA, § 2(b)(5). Likewise, the term "substantially limits" is to be construed "broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 20 C.F.R. § 1630.2(j)(1)(i); *see also* 20 C.F.R. § 1630.2(j)(1)(iii) (determining the threshold issue of whether an impairment is substantially limiting "should not demand extensive analysis."). With respect to lifting restrictions, the appendix to the EEOC's amended regulations provides the following example:

> [I]f a person whose job requires heavy lifting develops a disability that prevents him or her from lifting more than fifty pounds and, consequently, from performing

8

not only his or her existing job but also other jobs that would similarly require heavy lifting, that person would be substantially limited in working because he or she is substantially limited in performing the class of jobs that require heavy lifting.

29 C.F.R. § 1630, Appendix, *Substantially Limited in Working*.[1]

Moreover, numerous post-ADAAA cases in this circuit have held that a lifting restriction may substantially limit a major life activity. *Love v. Bd. of Education of City of Chicago*, 2020 WL 247378, at *4 (N.D. Ill. Jan. 16, 2020) (holding plaintiff sufficiently alleged torn rotator cuffs and an inability to lift heavy items substantially limited her under the standard outlined in the ADAAA); *Jankowski v. Dean Foods Co.*, 378 F.Supp.3d 697, 706-07 (N.D. Ill. 2019) (denying summary judgment because the plaintiff's inability to lift more than 25 pounds from floor to waist and push more than 50 pounds could substantially limit his ability to perform the major life activity of lifting); *Quinn v. Chicago Transit Authority*, 2018 WL 4282598, at *7 (N.D. Ill. Sept. 7, 2018) (concluding allegation that plaintiff had "limited use" of his left hand and a restriction against lifting more than twenty pounds pled a plausible basis for finding a record of an impairment that substantially limited a major life activity); *Johnson v. City of Chicago*, 2017 WL 1208377, at *3 (N.D. Ill. March 31, 2017) (denying motion to dismiss where plaintiff's allegation that his injured left shoulder with an inability to perform lifting or overhead tasks above shoulder height with any weight more than ten pounds and limitation to no more than occasionally carrying 50 pounds plausibly limited substantially his ability to perform certain major life activities); *Ehlerding v. American Mattress and Upholstery, Inc.*, 208 F.Supp.3d 944, 950-51 (N.D. Ind. Sept. 22, 2016)

---

[1] *See also* 29 C.F.R. § 1630, Appendix, *Effects of an Impairment Lasting Few Than Six Months Can be Substantially Limiting* ("if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability."); *id*. at *Substantial Limitation in Only One Major Life Activity Required* ("[S]omeone with an impairment resulting in a 20-pound lifting restriction . . . is substantially limited in the major life activity of lifting, and need not also show that he is unable to perform activities of daily living that require lifting in order to be considered substantially limited in lifting.").

(denying motion to dismiss and finding that plaintiff's allegation that due to his hernia and resultant surgery, he was directed not to lift heavy objects adequately alleged a disability that substantially limited his major life activities of working and lifting); *Ceska v. City of Chicago*, 2015 WL 468767, *3 (N.D. Ill. Feb. 3, 2015) (holding under the less demanding standard of the ADAAA, a reasonable jury could find that a restriction to lifting eight pounds frequently and twenty pounds occasionally, which was later changed to ten pounds occasionally, substantially limited plaintiff in the major life activity of lifting); *Modjeska v. United Parcel Service, In.*, 54 F.Supp.3d 1046, 1060 (E.D. Wis. Oct. 16, 2014) (denying summary judgment because plaintiff's restriction of lifting no greater than five to ten pounds could qualify as a disability for purposes of the ADA as amended); *Bob-Maunuel*, 10 F.Supp.3d at 881 (holding plaintiff's hernia with ten-pound lifting restriction constituted a disability that limited the major life activity of lifting); *Heatherly v. Portillo's Hot Dogs, Inc.*, 958 F.Supp.2d 913, 921 (N.D. Ill. 2013) (concluding that plaintiff presented sufficient evidence to create a triable issue of fact as to whether her restrictions impacted the major lift activity of lifting where plaintiff's "nurse testified that [a] medical note that stated [plaintiff] should only engage in 'light duty' meant that [plaintiff] should refrain from 'heavy lifting'").

Considering the more lenient post-ADAAA standards and the post-ADAAA case law, a condition that prevents an employee from lifting more than 35 pounds with a restriction on pushing and pulling at 150 pounds may substantially limit a major life activity. The Court rejects FleetPride's argument to the contrary as it is based on standards predating the ADAAA and its regulations. *See* 29 C.F.R. § 1630.2(j)(1)(iv) ("[T]he term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA."). Drawing all inferences in Gray's favor, the

Court finds that Gray's FAC sufficiently pleads that his condition constituted a disability that substantially limits the major life activity of lifting.

For all these reasons, the FAC contains sufficient allegations to establish that Gray is actually disabled within the meaning of the ADA.

### 2. Perceived Impairment

Whether or not Gray alleges that he was actually disabled, FleetPride argues that Gray does not adequately plead that he was "regarded as" being disabled by FleetPride. *See* 42 U.S.C. § 12012(1)(C). In particular, FleetPride asserts that Gray's allegations of being perceived as disabled also fail since he does not allege that: (1) he was substantially limited in any major life activity due to his injury and FleetPride mistakenly believed he had any limitation other than the restrictions caused by his injury; and (2) FleetPride believed that his injury limited him from any activities other than performing his job as a Driver. Both of FleetPride's arguments are misplaced.

To begin, a plaintiff "meets the requirement of 'being regarded as having such an impairment' if . . . he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major lift activity." 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(j)(2). In other words, "after the 2008 amendments to the ADA, a plaintiff need not show that the employer regarded her as having an impairment that *substantially limits* one or more life activities." *Leibas v. Dart*, 2020 WL 6134992, at *5 n.5 (N.D. Ill. Oct. 19, 2020) (emphasis in original); *see also Richardson*, 926 F.3d at 886–87 ("Congress amended the ADA to make clear an individual can be 'regarded as' having an impairment 'whether or not the impairment limits or is perceived to limit a major life activity.'"). And the standard requiring that a plaintiff show an "impairment substantially limits his or her ability to perform a class of jobs or broad range of job in various

11

classes as compared to most people having comparable training, skills, and abilities" to prove a substantial limitation in working only applies to the "actual disability" prong of the ADA. Thus, under the "regard as" prong, Gray need not allege that FleetPride believed he had an impairment that substantially limited a major life activity, including the major life activity of working by substantially limiting his ability to perform activities other than performing his job as a Driver.

But, in any event, Gray has adequately alleged that his inability to lift more than 35 pounds with a restriction on pushing and pulling at 150 pounds is a substantial limitation on a major life activity, as already discussed. To be "regarded as" having an impairment, Gray need not allege that FleetPride mistakenly believed that he had any limitation other than the restrictions caused by his injury. Moreover, Gray alleges that FleetPride believed that his physical condition limited him from activities other than performing his Driver job.

Construing the allegations in Gray's favor, he sufficiently alleges the existence of a disability based on him having been regarded as having a physical impairment within the meaning of the ADA. FleetPride was aware that Gray suffered an injury at work in December 2016 and that he was out on leave until May 2017. When he tried to return from that leave, Gray informed FleetPride that his physician had stated that he could not lift objects over 35 pounds and was restricted on pushing and pulling at 150 pounds. FleetPride was aware that Gray was willing and able to take on a new position, including at a different location, and/or retrain for an alternate position. *Id*. at ¶¶ 19, 25. According to the FAC, Gray had been employed in the industry since 1999 and was qualified for a variety of positions at FleetPride, such as warehouse manager, forklift driver, or a customer service job. *Id*. at ¶¶ 26-28, 31. Gray further alleges that he had good relationships with employees at other FleetPride locations, such as Chicago, Mokena, Bensenville, Elgin, Willowbrook, and Oswego, and could have easily transitioned to an open position in one of

those facilities. *Id*. at ¶ 29. Nonetheless, FleetPride terminated his employment two days later. *Id*. at ¶¶ 23, 32-33. The fact that FleetPride terminated Gray as soon as it became aware of his restrictions and he requested an accommodation raises a plausible inference that Gray was terminated because of a perceived impairment. FleetPride told Gray that "since your restrictions are permanent, unfortunately we are unable to accommodate." *Id*. at ¶ 21. These allegations sufficiently allege that FleetPride viewed Gray's physical condition as disqualifying from performing his specific delivery Driver job at FleetPride and that FleetPride regarded him as unable to perform a broad class of jobs by not allowing him to return to work in any job or capacity. Under these facts, the Court concludes the FAC plausibly suggests that FleetPride regarded Gray's condition to be a physical impairment covered under the ADA.

In sum, because Gray alleges facts from which it is plausible to infer that he possesses a physical impairment that substantially limits him in one or more major life activity and that he was regarded by FleetPride as having such an impairment, FleetPride's motion to dismiss Gray's ADA claims on these grounds is denied.

**B.     Failure to Accommodate**

FleetPride next argues that Gray has not stated a viable failure to accommodate claim. The three elements of a failure to accommodate claim require the employee to show: "(1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *See Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021). An individual covered only under the "regarded as" prong is not entitled to a reasonable accommodation. 42 U.S.C. § 12201(h).

13

### 1. Reassignment to an Open Position

FleetPride contends that Gray's claim for failure to accommodate in the form of a reassignment should be dismissed because he has not identified a specific vacant position to which he could have been transferred. Gray alleges that a reasonable accommodation was available in the form of a position that does not require lifting over 35 pounds with a restriction on pushing and pulling at 150 pounds. The duty to reasonably accommodate a disabled employee may include reassignment to a vacant position. *See* 42 U.S.C. § 12111(9)(B); *Brown v. Milwaukee Bd. of Sch. Directors*, 855 F.3d 818, 820 (7th Cir. 2017) ("Reassigning disabled employees to vacant positions that they can perform is a reasonable accommodation.") (internal quotation marks omitted); *E.E.O.C. v. United Airlines,* 693 F.3d 760, 761 (7th Cir. 2012) (holding that "the ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer."). Moreover, a "disabled employee need not be the most qualified applicant for a vacant position, but [he] must be qualified for it." *Brown*, 855 F.3d at 820. In order to provide a reasonable accommodation, an employer is not required to "bump" another employee from a position to create a vacancy, create a new position for the disabled employee, or promote a disabled employee to accommodate them. *Id*. at 820-21; *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996).

"Identifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process." *Brown*, 855 F.3d at 821; *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) ("Once an employee requests a reasonable accommodation, the employer must meet the employee halfway and engage in a

14

'flexible, interactive process' to identify the necessary accommodations."). "If a reasonable accommodation was available but the employer prevented its identification by failing to engage in the interactive process, that failure is actionable." *Brown*, 855 F.3d at 821. An interactive process makes sense because "each party holds information the other does not have or cannot easily obtain." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 316 (3d Cir. 1999). For example, "employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities, especially in a large company. Thus, the interactive process may often lead to the identification of a suitable position." *Shapiro v. Township of Lakewood*, 292 F.3d 356, 359 (3d Cir. 2002) (Alito, J.) (quoting *Mengine v. Runyon,* 114 F.3d 415, 420 (3d Cir. 1997)). As part of an employer's duty to accommodate by means of job reassignment, "an employer is required to identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites," and must also "consider transferring the employee to any of these other jobs, including those that would represent a demotion." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 694 (7th Cir. 1998) (*quoting Dalton v. Subaru–Isuzu Automotive Inc.,* 141 F.3d 667, 678 (7th Cir.1998)).

    The Court finds that Gray has pled a plausible claim for failure to accommodate, particularly in light of FleetPride's duty to assist with identifying open positions as part of the interactive process that follows an employee's request for a reasonable accommodation. Gray alleges that he told FleetPride that "he was willing and able to take on either a new position, or a position in an alternative location." Doc. 26, ¶¶ 19, 25. FleetPride responded to Gray's request for a reassignment by telling him that "since your restrictions are permanent, unfortunately we are unable to accommodate" and terminating him with no further action or communication. *Id*. at ¶¶

15

21, 23, 31-33. These allegations plausibly reflect that FleetPride did not communicate with Gray and attempt to ascertain whether it had a position available for which Gray might have been qualified, which may amount to a refusal to engage in the interactive process.

Moreover, Gray alleges that he had been employed in the industry since 1999 and was qualified to perform a variety of other positions at FleetPride. Doc. 26, ¶ 26. Gray alleges that with 280 branches, 52 service centers, and 5 distribution centers covering 46 states, FleetPride must have had a position that would not require him to lift over 35 pounds with a restriction on pushing and pushing at 150 pounds. *Id*. at ¶¶ 24, 30. Gray alleges that he has computer skills, is a certified fork lift driver, and is qualified to be a warehouse manager. *Id*. at ¶ 27. Gray contends that he was qualified for a customer service position and he was told many times by FleetPride's agent Chuck Herman that he had excellent customer service skills. *Id*. at ¶ 28. Gray also contends that he had built good relationships with other FleetPride locations in Chicago, Mokena, Bensenville, Elgin, Willowbrook, and Oswego and he could have easily transitioned to an open position in one of those facilities. *Id*. at ¶ 29. Given that he was terminated two days after FleetPride learned of his permanent restrictions, Gray alleges that FleetPride did not attempt to accommodate his disability and he was denied the opportunity to apply for any other positions. *Id*. at ¶¶ 31-33.

In sum, Gray has sufficiently pled a failure to accommodate claim. Specifically, Gray has cured the deficiencies in his initial complaint by alleging additional facts that allow a plausible inference that there were other positions at FleetPride for which he was qualified and to which reassignment would have been a reasonable accommodation. Moreover, it is plausible to infer that FleetPride's failure to engage in an interactive process prevented Gray from determining whether open positions were available which could have constituted an appropriate accommodation.

16

Therefore, Gray was not required to explicitly identify in the FAC an open position that was available at FleetPride. Rather, it is sufficient at this stage that Gray has alleged facts that allow a reasonable inference that he was qualified for some non-Driver positions at FleetPride, that it was plausible there were open positions at FleetPride, and that FleetPride's failure to engage in the interactive process deprived him of the opportunity to explore open positions as a reasonable accommodation. Overall, this is sufficient to state a claim under *Twombly*.

The case on which FleetPride relies to argue that to survive a motion to dismiss, Gray "must provide some factual basis demonstrating a vacant position exists for which [he] was qualified," *Platt v. Ch. Transit Auth.*, 2019 WL 5393995, at *5 (N.D. Ill. Oc. 22, 2019), is distinguishable. The plaintiff in *Platt* did not appear to allege that the defendant employer failed to engage in the interactive process to identify if there were open positions to which the plaintiff could have been reassigned. *See id*. at *2 ("Plaintiff alleges that CTA offered Platt several reassignment positions, but that he was not medically qualified to accept them."). Here, in contrast, Gray essentially alleges that FleetPride did not engage with him in an interactive process to ascertain whether it had a position available for which Gray might have been qualified, and it did not offer him any reassignment positions.

Neither the cases that *Platt* cites nor any of the other cases FleetPride cites are helpful. In *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005), the Seventh Circuit affirmed a grant of summary judgment under the ADA, not dismissal. *Jackson* considered the success of the interactive process between employer and employee by looking at "whether there [was] a genuine issue of material fact regarding the availability of a vacant position to accommodate" the plaintiff. *Id*. at 813. The Seventh Circuit held that at summary judgment, it is the plaintiff's burden to show that a vacant position exists for which he was qualified. *Id*. Although Gray ultimately has the

burden at the summary judgment or trial stage to demonstrate that a vacant position existed, he is not required to produce evidence to satisfy this burden at the motion to dismiss stage.[2] Gray has alleged enough at the pleadings stage of the litigation and FleetPride may revisit the issue at summary judgment if discovery reveals that no vacant position existed to which he could have been reassigned. *Hawkins v. West Penn Allegheny Health System*, 2014 WL 5803112, at *7 (W.D. Pa. Nov. 7, 2014) (finding that resolution of the issue of whether an appropriate vacant position exists "is best reserved for the summary judgment stage following a full opportunity for discovery" where plaintiff alleged that defendant "failed to meaningfully communicate with her concerning her various requests for accommodation.").[3]

---

[2] *See also Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 856-57 (7th Cir. 2015) (at summary judgment, the employee has to present evidence that "a vacant position exists at the time the employee requests reassignment to that position."); *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) (a plaintiff "fail[s] to meet his burden of producing evidence to prevent summary judgment" when he fails to "show[] that a vacant position exists and that the plaintiff is qualified for that position.").

[3] The other case cited by *Platt*, *E.E.O.C. v. Supervalu, inc.*, 674 F.Supp.2d 1007, 1012 (N.D. Ill. 2009), held only that "a complaint asserting discrimination under the ADA must provide some allegation or allegations specifically indicating that the plaintiff is qualified to perform the essential functions of the job without or without accommodation." *Supervalu, Inc.* did not address the sufficiency of allegations of a claim for failure to accommodate by transferring to a vacant position. Since the FAC does properly plead that Gray is qualified to perform work in other positions despite his restrictions, *Supervalu, Inc.* is unpersuasive. FleetPride cites two additional cases which do not support its argument that Gray must identify a vacant position for which he was qualified at this stage. Doc. 34 at 4-5. *Martinez v. AM. Airlines*, 2017 WL 201363, at *6 (N.D. Ill. Jan. 18, 2017), *aff'd*, 715 F. App'x 568 (7th Cir. 2018), involved a grant of summary judgment to the defendant employer on a failure to accommodate claim which "was made after the close of discovery, a period during which [plaintiff] had every opportunity to obtain evidence regarding positions that were vacant during the relevant time period," but plaintiff "failed to provide evidence from which a reasonable jury could find that there were vacant positions at [defendant] that the company should have made available to him." The decision in *Rouse v. Chi. Transit Auth.*, 2014 WL 3810876, at *7 (N.D. Ill. July 31, 2014), is also unhelpful to FleetPride as the district judge vacated the relevant part of that decision on reconsideration, concluding plaintiff sufficiently stated a claim that defendant failed to provide a reasonable accommodation for his disability by refusing to transfer plaintiff to a vacant but unspecified position for which he was qualified because plaintiff alleged, among other things, that defendant prevented him and all other employees in his section from viewing available open positions with the CTA. *See Rouse v. Chicago Transit Authority*, 2016 WL 5233591, at *3-4 (N.D. Ill. Sept. 21, 2016).

## 2. Failure to Request an Accommodation or Identify Any Reasonable Accommodation Related to the Driver Position

Finally, FleetPride argues that Gray's failure to accommodate claim should be dismissed because he has not alleged that he requested a reasonable accommodation nor identified any reasonable accommodation that would have allowed him to perform the essential functions of his Driver position. These arguments are easily disposed of. First, Gray has adequately alleged that he requested a transfer to a vacant position as an accommodation for his disability. The Seventh Circuit has emphasized that "[a] request as straightforward as asking for continued employment is a sufficient request for accommodation." *Hendricks-Robinson*, 154 F.3d at 694; *Miller v. Illinois Dep't of Corrections,* 107 F.3d 483, 486–87 (7th Cir.1997) ("Even if an employee who as here becomes disabled while employed just says to the employer, 'I want to keep working for you—do you have any suggestions?' the employer has a duty under the Act to ascertain whether he has some job that the employee might be able to fill."). Gray alleges that he "made it know[n] he was willing to move to a new location, take an alternate position, and/or retrain." Doc. 26, ¶ 25; *see also id*. at ¶ 19 (alleging "[d]ue to the restrictions, on May 20, 2017, Plaintiff told [] Defendant's agent that he was willing and able to take on either a new position, or a position in an alternative location."). These allegations are sufficient to show that Gray made a request for continued employment and sought reassignment to another position. Accordingly, FleetPride is not entitled to dismissal of Gray's failure to accommodate claim on the ground that he did not adequately allege a request for an accommodation.

Similarly, FleetPride's argument that Gray does not allege any reasonable accommodation that would have allowed him to perform the essential functions of his Driver position fails as a basis for dismissing Gray's failure to accommodate claim. The ADA generally defines a "qualified individual" with a disability as " an individual who, with or without reasonable accommodation,

can perform the essential functions of the employment position that such individual holds *or desires.*" 42 U.S.C. § 12111(8)) (emphasis added). The essence of Gray's FAC is not that he is qualified to work as a Driver with some kind of accommodation, but rather that he is qualified to work in a variety of other positions at FleetPride that he could have been reassigned to. "It is well established that the employer's duty reasonably to accommodate a disabled employee includes reassignment of the employee to a vacant position for which []he is qualified." *Dalton*, 141 F.3d at 677 (citing 42 U.S.C. § 12111(9)(B)). Because the ADA includes claims for failure to transfer as an accommodation, Gray does not have to plead that he is able to perform the duties of his former Driver position with or without reasonable accommodation. *Elzeftawy v. Pernix Group, Inc.*, 477 F.Supp.3d 734, 763 (7th Cir. 2020). Thus, it is not appropriate to dismiss Gray's failure to accommodate claim on this ground.

### III. CONCLUSION

For the above reasons, the Court denies Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [30]. FleetPride shall answer that pleading by October 31, 2022. The parties are directed to file a joint status report with a proposed fact discovery schedule by November 8, 2022. A status hearing is set for November 16, 2022 at 9:15 a.m. by telephone.

**SO ORDERED.**
Dated: October 17, 2022

Sunil R. Harjani
United States Magistrate Judge